# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **CRIMINAL NO. 23-CR-67-RC** |
| **CHARLOTTE BAMBER,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by its undersigned counsel, hereby submits this memorandum in aid of sentencing of defendant Charlotte Bamber. On June 26, 2023, the defendant pleaded guilty pursuant to a plea agreement to one count of false statements in violation of 18 U.S.C. § 1001. The defendant's guilty plea arises from false statements the defendant made in connection with an investigation into market manipulation at Trading Firm A where she formerly worked as a trader. After consideration of the Section 3553(a) factors, the United States respectfully requests that this Court impose a term of imprisonment at the low-end of the applicable Sentencing Guidelines range—specifically, a term of probation—as well as impose a fine within the Guidelines range and require the defendant to seek mental health and/or substance abuse treatment as directed by Probation.

### Factual Background

From approximately August 2011 to May 2019, the defendant was employed as a trader at an international commodity trading firm ("Trading Firm A"), working in both Geneva, Switzerland and Houston, Texas. In that capacity, she traded different petroleum products, including oil distillates and liquid propane gas. In 2019, the United States began investigating allegations that Trading Firm A, and certain individuals at that firm, were engaged in commodity price

manipulation. During that investigation, the defendant self-disclosed to the United States that she and other traders at Trading Firm A had, in fact, engaged in manipulative trading conduct.

On September 8, 2020, the defendant entered into a non-prosecution agreement ("NPA") with the U.S. Department of Justice, Criminal Division, Fraud Section relating to her manipulative trading conduct while working at Trading Firm A. In the NPA, the defendant admitted that she had committed wire fraud and commodity price manipulation while working as a trader at Trading Firm A. Specifically, the defendant admitted that, among other things, at the instruction of her supervisors, she placed orders during the S&P Global Platts ("Platts") window for certain products to manipulate the daily Platts benchmark price for certain physical commodities. The defendant also admitted that she placed non-economic orders in the Platts window to artificially alter the market price of certain commodities and to benefit Trading Firm A, which had contracts for physical delivery that were priced based on the Platts benchmark price assessments that the defendant manipulated. As part of the NPA, the defendant agreed to comply with its terms, including the requirements that she (i) truthfully and completely disclose all information with respect to her activities about which the United States might inquire of her, and (ii) provide truthful and complete information during, among other things, interviews with the United States.

To that end, on several occasions between 2019 and 2022, the defendant met with the United States, including FBI agents, to answer questions regarding, among other things, her participation in, and knowledge of, manipulative trading activity at Trading Firm A. In several of those meetings, the defendant was asked explicitly whether she had been in contact with any employees of Trading Firm A and, if so, to describe the contact.

For example, on February 18, 2022, the defendant met with FBI agents and DOJ Fraud Section attorneys in Washington, D.C. for an interview. During the interview, the defendant was

asked whether she had been in contact with any employees at Trading Firm A. In response, the defendant identified three employees with whom she had been in contact and stated there were no other Trading Firm A employees with whom she had been in contact. That statement was a lie. In truth and in fact, on at least three occasions prior to the February 18, 2022 interview, the defendant had created pseudonymous email accounts on end-to-end encrypted email platforms and sent emails containing threatening and/or harassing messages to several other Trading Firm A employees, including employees who were subjects of the United States' investigation into Trading Firm A. In these pseudonymous emails, the defendant referenced, among other things, the United States' investigation into manipulative trading activity at Trading Firm A. For example, on December 24, 2021, the defendant sent a pseudonymous email to Employee 2's Trading Firm A email address that said, "[Employee 2's wife's name] will find a nice man to raise her kids and they will take his name. // There is a market in the industry over how many years you will do // Merry Christmas and enjoy."

Further, on at least five occasions after the February 18, 2022 interview, the defendant created additional pseudonymous email accounts and sent additional threatening and/or harassing emails to Trading Firm A employees, including employees who were subjects of the United States' investigation into Trading Firm A. For example, on March 2, 2022, the defendant sent a pseudonymous email to Employee 2's Trading Firm A email address that said, "May is going to be a life changing month for you. // Management are throwing you under the bus. You're facing decades. // Tick. // Tock." Additional example of pseudonymous emails sent by the defendant are included in the Statement of the Offense (ECF No. 13) that accompanies the defendant's plea agreement.

The defendant did not disclose these emails or her prior false statements until confronted with evidence of the emails on October 6, 2022. Only at that point did the defendant acknowledge that she had sent the pseudonymous emails and that she had not answered truthfully during prior interviews, including on February 18, 2022, when asked about contact with employees of Trading Firm A. The defendant's false statements about her contact with Trading Firm A employees after she had entered into the NPA were a breach of the terms of her NPA.

### Sentencing Guidelines Calculation

In the defendant's plea agreement, the parties agreed to the following Sentencing Guidelines calculation:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2B1.1(a)(2) | 6 |
| Acceptance of Responsibility, U.S.S.G. § 3E1.1 | -2 |
| Adjusted Offense Level | 4 |
| | |
| Criminal History Category | I |

Probation arrived at the same Guidelines calculation in the PSR, which results in a Guidelines range of 0 to 6 months' imprisonment and a fine between $500 and $9,500.

### Section 3553(a) Factors

As the Court knows, under 18 U.S.C. § 3553(a), it should consider several factors in arriving at an appropriate sentence, including: (i) the nature and circumstances of the offense and the history and characteristics of the defendant, (ii) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (iii) the Sentencing Guidelines and related Sentencing Commission policy statements, (iv) the need to avoid unwarranted sentence disparities among similarly-situated defendants, and (v) the need to provide restitution to the victim of the

crime. In light of the § 3553(a) factors, the United States respectfully requests that the Court impose a sentence at the low-end of the Guidelines range of 0 to 6 months' imprisonment—specifically, a sentence of probation—as well as to impose a fine within the Guidelines range and require the defendant to seek mental health and/or substance abuse treatment as directed by Probation.

The defendant made false statements during interviews with the United States that were conducted as part of an investigation into price manipulation at Trading Firm A. To be clear, the false statement underlying the charges in this case relate only to the defendant's conduct during her cooperation with the United States' investigation—namely, false statements regarding her contact with Trading Firm A employees that were subjects of the United States' market manipulation investigation. In contrast, the false statements in this case do *not* pertain to the substantive information that the defendant provided related to market manipulation by her, and others, at Trading Firm A, for which the United States has developed independent evidence that corroborates certain information provided by the defendant. Nonetheless, her false statements significantly affected the United States' investigation in which it had devoted substantial resources over several years that involved interviewing witnesses, reviewing evidence, and analyzing complex trading data.

While the United States is not requesting a term of imprisonment, a probationary sentence will still afford adequate specific and general deterrence. In terms of specific deterrence, the defendant has pleaded guilty and will have to live with the collateral consequences of being a convicted felon, including how it may negatively affect her ability to enter the United States (where she had previously lived for several years) and whether she will be able to find employment in a regulated industry (like the commodities industry in which she had worked for a number of years

as a trader at Trading Firm A). In terms of general deterrence, the defendant's guilty plea shows that making false statements to federal agents has consequences and that telling the truth is paramount, especially after agreeing to cooperate and entering into a non-prosecution agreement with the United States. In addition to deterrence, the charges against the defendant and the defendant's guilty plea, will promote respect for the law and underscore the importance of being candid and truthful when providing information to the United States. Finally, the PSR details the defendant's history and characteristics, and based on that information, the United States submits that any term of probation should include a requirement of mental health and/or substance abuse treatment as determined by Probation.

## Conclusion

Accordingly, consistent with the relevant Section 3553(a) factors discussed above, the United States requests that the Court impose a sentence of imprisonment at the low-end of the applicable Guidelines range—specifically, a term of probation—as well as a fine within the Guidelines range and require the defendant to seek mental health and/or substance abuse treatment as directed by Probation.

Respectfully submitted,

GLENN S. LEON
Chief
Criminal Division, Fraud Section

By:   */s/Matthew F. Sullivan*
Matthew F. Sullivan
John J. Liolos
Trial Attorneys
United States Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
matthew.sullivan2@usdoj.gov
(202) 578-6583 (Sullivan)

**CERTIFICATE OF SERVICE**

I, Matthew F. Sullivan, hereby certify that on October 13, 2023, I caused the foregoing filing to be electronically filed with the Clerk of Court by using the Court's electronic filing system, which will automatically send a notice of electronic filing to the parties who have entered an appearance in this case.

    /s/ *Matthew F. Sullivan*
Matthew F. Sullivan
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section